## Walnut Run Coal Company *v.* Knight, Appellant.

*Mines and mining— Coal lease—Forfeiture.*

A coal lease provided that the lessee should pay ten cents per ton royalty, and should mine and ship the coal with all proper and due diligence. The lessee covenanted to mine at least 50,000 tons of coal each year, or pay royalty on that amount. The lease further provided that the lessor could repossess himself of the premises in the event of the failure of the lessee to pay the royalties at the time specified, but he was required to give sixty days' notice in writing of his intention to do so. The lessee went into possession of the premises, and was in possession nearly six years thereafter when notice was served upon him by the lessor. During this time he had only paid $89.00 in royalties, although up to the time of service of the notice he had mined over 40,000 tons. There was no evidence offered to excuse the nonpayment of royalties, nor was there any evidence of waiver on the part of the lessor. *Held*, that the lessor was entitled to recover possession in ejectment.

Argued Oct. 15, 1901. Appeal, No. 27, Oct. T., 1901, by defendant, from judgment of C. P. Cambria Co., Dec. T., 1899, No. 193, for plaintiff, non obstante veredicto in case of Walnut Run Coal Company v. G. Lee Knight. Before McCOLLUM, C. J , MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Ejectment for coal in Susquehanna township.

At the trial the jury returned a verdict for plaintiff for the land described in the writ to be released on the payment of $6,700.10 in one year from date.    The court reserved two questions of law.

On motion for judgment, BARKER, P. J., filed the following opinion :

The plaintiff brought an action of ejectment to recover the possession of the coal underlying about 400 acres of land in Susquehanna township.    At the trial of the case the plaintiff introduced evidence showing that the title to the said coal was in it, and rested ;  the defendant put in evidence a lease between the plaintiff and the defendant, dated December 24, 1892, in which the plaintiff leased to the defendant the said coal.    The lease contained, among others, the following clauses:

" The said party of the second part agrees to pay to the party of the first part, its successors and assigns, ten cents per ton of two thousand, two hundred and forty pounds, for all merchantable coal mined from the ' D' or Moshannon vein, and seven cents per ton for all merchantable coal mined from the ' E' vein, from the premises.

" Payments for royalty to be made between the 20th and 30th of each month for coal taken out during the preceding month, and shall continue to be so paid during the continuance of this lease.

" The said party of the second part bind themselves to mine and ship the coal with all proper and due diligence from the said colliery or collieries, and the coal hereby leased shall be mined and operated by the said party of the second part, their heirs and assigns, in the most approved and economical manner, and in accordance with the mining laws of this state, now in force or hereafter to be passed, and in such manner as shall be approved by the engineer of the party of the first part. . . . The said parties of the second part further agree to mine and produce from said leased properties, fifty thousand tons of coal during each and every year of the term, except for the year 1893, or pay royalty on that amount, unless prevented by miners' strikes or other unavoidable circumstances, including faults in the veins, which will prevent the mining of merchantable coal.

" In the event of the failure of the party of the second part,

its successors and assigns, to pay all the royalties hereinbefore provided for at the times stipulated for the payment thereof, it may be lawful for the party of the first part, its successors and assigns, to repossess themselves of the property herein leased, upon giving sixty days' notice, in writing, to the party of the second part of their intention so to do, and if within sixty days the party of the second part shall pay the royalty due in default, then in that event this lease shall be continued as hereinbefore provided.

" It is further understood and agreed as a contribution by the said lessors toward the erection of necessary structures and opening the mine, an allowance of five cents per ton is to be made on the first fifty thousand tons mined."

The defendant rested after the introduction of the above lease, and the plaintiff then showed that the defendant had paid $89.05 royalty for coal mined under the terms of the lease and rested. The defendant then called a number of witnesses, some of whom were engineers and experts, and introduced testimony to show that he had been prevented from mining the minimum tonnage provided for in the lease by unavoidable circumstances, including faults in the veins, which prevented the mining of merchantable coal. The plaintiff then called a number of witnesses in denial of these allegations and also in support of its contention, that had the mine been operated in the manner provided for in the lease, as quoted above, the defendant could have taken out the minimum tonnage provided for, regardless of the faults.

At the conclusion of the testimony the plaintiff's counsel submitted the following points :

1. Under the testimony in the cause, there being no dispute that a large quantity of coal had actually been mined and the royalty unpaid on October 25, 1898, when the notice of that date was given, the plaintiff is entitled to recover, and the verdict must be for the plaintiff.

2. If the court refuse to charge as requested in the first point, then as defendant's own testimony shows that up until June 1, 1900, he has actually mined from the leased property 70,929 tons, on which the stipulated royalty would be $4,592.90, on which he has paid but $89.05, the plaintiff is entitled in any event to a verdict for the premises described in the writ, to be

released upon the payment of $4,503.85, with interest thereon, within such reasonable time as the jury may fix.

Our mind had been fully occupied up to that time in consideration of the questions of law involved in the issue raised by the testimony, as stated above, and in regard to the many objections to the introduction of evidence offered, and we did not feel that we had a sufficient grasp upon the question raised by the first point to pass upon it without further consideration, and the evidence having closed at a late hour on Saturday, we submitted the question of the amount of royalty due and the length of time that should be given the defendant to pay it, and reserved the question raised by the first point as well as the right to enter an absolute judgment for the plaintiff non obstante veredicto.

The evidence showed that the defendant had entered into possession of the coal immediately after the date of the lease, and that up to the time of the service of the notice by the plaintiff of its intention to repossess the coal, had mined over 40,000 tons, which, after deducting the amount allowed towards the improvements of defendant, left a balance of almost $2,000 due. The evidence also disclosed that up to the time of the trial the defendant had mined 70,000 tons and yet had only paid, as stated above, $89.05, being for the months of August, September and October, 1893. We can discover in the evidence in the case no attempt on the part of the defendant to excuse or explain the nonpayment of the royalty, nor was any evidence of a waiver on the part of the plaintiff of the payment of the royalty due at the time the notice referred to above was given, and we have failed to discover any reason in the evidence or the law cited why the plaintiff should not have the right to enforce the forfeiture clause recited above.

Courts do not favor forfeitures, but they cannot avoid enforcing them when the party by whose default they are incurred cannot show some good and staple ground for the conduct of the other party on which to base a reasonable excuse for the default: Seeley v. Union Central Life Insurance Co., 10 Pa. Superior Ct. 270.

The evidence in the case showed that the defendant encountered serious faults in conducting his mining operations and that there were frequent conferences between him and the rep-

resentatives of the plaintiff as to the best methods to be resorted to in order to overcome these faults, but there is nothing in all the testimony showing any conduct on the part of the plaintiff on which to base a reasonable excuse for the default in payment of the royalties.

Objection was made to the offer of the notice given by plaintiff to defendant of its intention to repossess the coal, that the lease did not provide for a forfeiture for the reasons set forth in the notice. The notice was not explicit as to the reason for terminating the lease and retaking possession, but the only provision for doing so in the lease being for nonpayment of rent, the notice, taken as a whole and in connection with the previous letter referred to therein, was a sufficient notice under the terms of the lease.

In Kreutz v. McKnight, 53 Pa. 319, where the terms of the lease were somewhat similar to the lease in this case, the lessors, without any notice or demand, took possession, and on ejectment by the lessee to recover possession, the Supreme Court, by Chief Justice WOODWARD, said: "If Kreutz had shown substantial performance of the conditions of the lease, or a bona fide attempt to perform them, we would hold the lessors to a very strict exercise of their right to 'dissolve, terminate and annul the lease.' We do not think there was the necessary evidence of their exercise of this right. The putting another tenant on the premises without demand on, or notice to, Kreutz, was not the way to enforce the forfeiture," and yet, after the declaration above in the opinion, Chief Justice WOODWARD says that the infirmity of the plaintiff's case, by reason of his utter failure to show performance or offer of performance of covenants, prevented him from taking advantage of the failure of the lessee to resort to the proper steps to enforce the forfeiture.

And now, December 3, 1900, the question reserved under the first point submitted by the plaintiff's counsel is determined in favor of the plaintiff, and it is directed that, on payment of the jury fee, judgment be entered for the plaintiff and against the defendant for the premises described in the writ, non obstante veredicto.

*Error assigned* among others was in entering judgment for plaintiff.

*Alvin Evans*, with him *Ellis Ames Ballard*, and *J. W. Leech*, for appellant.

*Thomas H. Murray*, with him *M. D. Kittell*, *P. J. Little*, *Allison O. Smith* and *W. D. Bigler*, for appellee.

PER CURIAM, November 8, 1901:

This was an action of ejectment brought by the Walnut Run Coal Company to recover the possession of the coal underlying about 400 acres of land in Susquehanna township. The defendant had notice of the ejectment and conceded that it had failed to comply with the terms of the lease. Testimony was taken by the parties litigant and a verdict was rendered by the jury subject to the reservation by the court of "the question raised by the first point as well as the right to enter an absolute judgment for the plaintiff, non obstante veredicto." The court upon a fair and just determination of the question involved entered the following decree or judgment, to wit: "And now, December 3, 1900, the question reserved under the first point submitted by the plaintiff's counsel is determined in favor of the plaintiff, and it is directed that on payment of the jury fee, judgment be entered for the plaintiff and against the defendant for the premises described in the writ, non obstante veredicto." The action of the court was clearly right and nothing is discoverable in it which warrants criticism or affords any just cause of complaint. It is not necessary to refer herein to any of the matters included in the contract or agreement of the parties. It is sufficient to say that all of the matters contained therein which relate to the question involved appear in the clear and satisfactory opinion of the learned court below. On that opinion we affirm the judgment entered by said court.